850 So.2d 638 (2003)
Justin SHERIDAN, Appellant,
v.
STATE of Florida, Appellee.
No. 2D01-3885.
District Court of Appeal of Florida, Second District.
July 25, 2003.
Ronald N. Toward, Bartow, for Appellant.
*639 Charles J. Crist, Jr., Attorney General, Tallahassee, and Katherine V. Blanco, Assistant Attorney General, Tampa, for Appellee.
PER CURIAM.
Justin Sheridan appeals from his judgment and sentence for trafficking in methamphetamine, contending that the trial court erred in failing to grant his motion for judgment of acquittal and reducing the offense to possession. We agree and reverse.
On January 19, 2001, the automobile being operated by Mr. Sheridan was stopped by Polk County Sheriff's Office narcotics deputies. At trial, the defense focused on two issues: whether Mr. Sheridan possessed the requisite knowledge to sustain a conviction and whether the State proved the trafficking weight of the drug. Our resolution of these issues focuses on the testimony of three witnesses.
The State's first witness, Detective Wallace, testified that he conversed with Mr. Sheridan at the scene. After Detective Wallace told Mr. Sheridan that law enforcement was aware that Mr. Sheridan intended to trade an ounce of methamphetamine for two pounds of marijuana, Mr. Sheridan admitted to Detective Wallace that he was delivering the substance for George Mendosa and that he had made other deliveries for Mr. Mendosa in the past. According to the detective, Mr. Sheridan stated that he was coming over here with this ounce to trade for two pounds of marijuana. Mr. Sheridan made this statement after Detective Bell had shown him a bag of a substance that had presumptively tested positive for methamphetamine, at which time Mr. Sheridan was arrested.
The State's expert chemist then testified that he had tested and weighed a baggie marked State's exhibit number two. The testing identified the presence of methamphetamine, and the contents of the baggie weighed less than one ounce, at 23.0 grams. Importantly, the witness also testified that a baggie identified as State's exhibit number one had not been provided to him for examination. He had not seen or tested either that baggie or its contents. During the chemist's testimony the defense tendered two objections, one as to the substance's identity and the other as to the weight of the baggie marked as exhibit two. Each was overruled.
Finally, Detective Bell testified that State's exhibits one and two were the baggies he had seized from the automobile operated by Mr. Sheridan. The field test indicated the contents were methamphetamine rather than similar looking items such as flour or vitamin powder. When asked how the substance from State's exhibit number one got into the baggie marked State's exhibit two, Detective Bell testified that Detective Wallace "separated them" prior to entering them as evidence.
At the conclusion of the State's case, defense counsel offered two bases for a judgment of acquittal. As the first ground, he asserted that his client lacked the requisite knowledge or intent to commit the offense, and the trial court properly denied the motion on that basis. Second, defense counsel argued that the State failed to prove the offense of trafficking because it failed to prove the element of weight. Because the State could prove the weight necessary for the element of the trafficking crime only by improperly commingling the contents of the two bags and then finding an aggregate weight, the defense contended that the offense should be reduced to possession. The court's denial of the motion for judgment of acquittal on that basis was error.
*640 The State charged that Mr. Sheridan had violated section 893.135, Florida Statutes (2000), by possessing fourteen grams or more of a controlled substance. Detective Bell testified that he seized the two baggies marked, respectively, State's exhibits one and two from Mr. Sheridan's vehicle. The chemist testified that only one baggie had been provided for chemical testing. The conclusion is inescapable that someone from law enforcement commingled the contents of the two baggies into one.
In Safford v. State, 708 So.2d 676 (Fla. 2d DCA 1998), our court condemned this practice and concluded that combining the contents of a number of packets into one mixture to meet the quantitative element of the trafficking statute was error. This court noted:
The testing of the powder cocaine mixture, however, is distinguishable in that there are many white powdery substances which can resemble powder cocaine. Therefore, the chemist's failure to test each individual packet before the contents were combined and weighed mandates reversal.
Id. at 677. To reach this conclusion this court relied upon Ross v. State, 528 So.2d 1237, 1239 (Fla. 3d DCA 1988), which held that the State must "establish that each of the subject packets contains cocaine or a mixture thereof which in the aggregate satisfies the ... statutory weight." See also State v. Clark, 538 So.2d 500 (Fla. 3d DCA 1989) (affirming the trial court's reduction of a charge from trafficking to possession because the chemist mingled the powdery contents of capsules that were tested for heroin with the contents of untested capsules prior to weighing them).
The rationale behind Ross applies to this case. The substance found by the detective was a powdery material, according to State testimony, similar in appearance to other noncontrolled substances, such as vitamin powder or flour. Therefore, the contents of each baggie should have been tested separately, and, if found to be the same controlled substance, the weights combined. As the State bears the burden of proof as to the amount, it is inappropriate to permit the State to commingle, albeit negligently, the contents without testing and then assert that the contents of each baggie when aggregated meet the trafficking quantity, all without providing the defense with an opportunity to test the alleged drugs.[1] The State's procedure created an assumption as to the amount without the necessary proof. Thus, the evidence of trafficking was legally insufficient and should not have gone to the jury.
To avoid the application of this rule the dissent cites Pama v. State, 552 So.2d 309 (Fla. 2d DCA 1989). There, this court cited the recognized rule that the "state may prove the identity of a controlled substance by circumstantial evidence such as the substance's appearance, odor, and packaging, by the circumstances under which the substance was seized ...; [including] a person's on-the-scene remarks identifying the substance...." Id. at 311. We have no disagreement with the rule as properly used here to establish that the aggregated substance contained some percentage of methamphetamine. The record establishes the presumptive testing, the *641 chemical testing, and the accused's admission. The defendant's admission refuted his contention that he lacked knowledge. However, Pama cannot be read to relieve the State of its burden to prove the contents of each baggie. Pama is factually dissimilar in that the testimony of weight came not from a suspect but from a law enforcement officer; and it is significant also that the Pama court refused to use that testimony to find a trafficking quantity. We note that this record is silent as to packaging. While the record establishes the existence of two baggies, there is no testimony describing the contents of each baggie.
Clearly, the case law permits circumstantial evidence to be used to establish the identity of certain controlled substances such as marijuana and crack cocaine. See Brooks v. State, 762 So.2d 879, 893-94 (Fla.2000). However, the rule has not yet been extended to allow circumstantial proof of weight. In Brooks, our supreme court held that a drug dealer may express an opinion regarding the identity of crack cocaine if a proper predicate can be established. Id. at 893. However, the court further explained in Brooks that the trial court erred by allowing the drug dealer to express his opinion as to the exact weight of each piece of crack cocaine, because "there was not a sufficient predicate establishing that Johnson was qualified as an expert in determining the exact weight of crack cocaine rocks by visual inspection." Id. at 894 n. 17. Similarly, the record here fails to establish that Mr. Sheridan was a dealer or that he was qualified to offer an opinion as to the exact weight of the drug by visual inspection.
Recently, the distinction between powdered cocaine and crack cocaine in the context of determining the weight for trafficking purposes was noted in Lyons v. State, 807 So.2d 709, 710 (Fla. 5th DCA 2002). There, the court noted that the rule against commingling did not apply to crack cocaine but did apply to the powdered cocaine yet allowed evidence of weight despite a commingling contention because of the unique packaging of the drugs. The court relied on the following factors: The powdered cocaine was packaged to resemble two bricks of approximately the same size; the bricks were similar in appearance; and they were hidden together in a single cereal box wrapped with tape. Those factors are not present here. This record is devoid of evidence describing the contents of each baggie, the approximate amount each contained, or their packaging as a single unit.
Ultimately, instead of relying upon evidence, the dissent assumes that the two packages each contained methamphetamine because the accused said he had an ounce of the drug, a weight not supported by the chemist's testimony (although admittedly there was only a one-gram difference). It is possible that one of the two bags held the drug or that both did. As a result of the commingling of the contents, the truth of the matter is incapable of proof. The accused's opinion as to weight, without more, is insufficient under present law to establish a trafficking weight of fourteen grams or more.
Reversed with instructions to grant the motion for judgment of acquittal as to trafficking, enter a verdict of guilty as to possession, and resentence accordingly.
WHATLEY and CASANUEVA, JJ., concur.
CASANUEVA, J., concurs specially.
KELLY, J., dissents with opinion.
*642 CASANUEVA, Judge, Concurring.
I am sure the dissenting opinion was crafted after long and careful thought. After review, I am unable to join with its reasoning.
First, the dissent contends that the sole issue is the identity of the controlled substance. To prove trafficking, the State must prove two primary elements: that the substance is a controlled substance and that its weight equals or exceeds the statutory trafficking weight. Failure to prove weight, in most instances, results in a conviction only for possession of the controlled substance. Here, the evidence established that among the contents seized and commingled was methamphetamine. However, pursuant to statute, the information charged that Mr. Sheridan did knowingly traffic in methamphetamine by possessing fourteen grams of the substance or any mixture containing it. The record fails to establish that either of the two seized bags individually met the statutory requirement, enunciated in the information, that Mr. Sheridan possessed fourteen grams of methamphetamine or a mixture containing that controlled substance. Thus, at that evidentiary point, the State could not meet its burden of proof.
To conclude that the State met its burden of proof, the dissent seeks to use the aggregate weight of the two seized packages without evidence that each contained the controlled substance. Logic and the scientific analysis finding the presence of methamphetamine establish that at least one seized bag contained the controlled substance; however, neither establishes that both bags did. The element of weight for the trafficking requirement cannot be met by taking the aggregate weight of all bags and proving that the bag containing the commingled contents contained methamphetamine. The weight is properly aggregated when each separate bag is found to contain methamphetamine or a mixture of the drug. Thus, two elements require evidentiary proof, and from the evidence adduced at trial further inferences or assumptions may be drawn. While it may be more likely than not that the second bag also contained methamphetamine, there is no evidence from which that assumption may be reached.
The dissent states, "[I]n my view, Mr. Sheridan's statement regarding weight is immaterial." I agree. That being so, no evidence establishes the weight element of the offense. That evidence cannot consist of the improperly mixed bags or a police officer's testimony at trial that a confidential informant told him that the defendant would be in possession of methamphetamine for the purpose of exchanging the drug for something else. The confidential informant's statement, if offered to prove the identity of the drugs carried by this defendant, would be inadmissible hearsay offered for the truth of the matter asserted, although the statement could be used, as it was here, for other purposes.
Additionally, it must be recalled that the evidentiary integrity of the seized items was destroyed while in the control of the seizing officers. We are fortunate to have officers in this state who are well educated in the requirements of the law, including evidence. It is unlikely that this error will arise with any frequency, but sometimes people make mistakes, and in those cases the rule of law must nevertheless be followed.
Finally, I fully concur in the majority opinion.
KELLY, Judge, Dissenting.
I would affirm Mr. Sheridan's conviction. I have no quarrel with the majority's statement that in Safford, 708 So.2d 676, this court, relying on Ross v. State, 528 *643 So.2d 1237 (holding that the State failed to prove a prima facie case of trafficking where it tested only two out of ninety-two packets of white powder resembling cocaine), disapproved the practice of commingling untested individual packets of drugs in powder form where the weight of the combined mixture is used to support increased sanctions. However, I do not believe the rationale behind these cases supports a reversal in this case. Rather, I agree with the State that this case is distinguishable from Safford and Ross because of Mr. Sheridan's admission that the substance he possessed was methamphetamine.
The rationale underlying Ross and Safford is that visual examination of separately wrapped packages of white powder is insufficient to prove that each package contains an illegal substance because the white powder may be any one of a variety of white powdery substances that are not illegal. Thus, if the State is going to rely on the aggregate weight of separately wrapped packages to establish that a defendant possessed a trafficking amount of contraband, it must prove that each package contained contraband.
While visual inspection alone may be insufficient to establish the identity of a white powder, there are other methods by which the State can establish identity. Obviously, chemical testing is one of those methods, but it is not the only method of proving identity. In Pama v. State, 552 So.2d 309, 311 (Fla. 2d DCA 1989), this court held:
The state may prove the identity of a controlled substance by circumstantial evidence such as the substance's appearance, odor, and packaging, by the circumstances under which the substance was seized, the manner by which the substance was being transported, a person's on-the-scene remarks identifying the substance, and circumstances surrounding the sale or use of the substance.
(Citations omitted). In Pama, the substance in question was marijuana. To prove identity, the State relied on testimony from "an experienced law enforcement officer" who examined twenty out of 234 bales of the substance. The court found the officer's testimony adequately proved that those twenty bales contained marijuana. The court then relied on circumstantial evidence regarding the substance's odor, packaging, and manner of transport to conclude that there was a sufficient basis to support the conclusion that the remaining 214 bales contained marijuana.
In this case, the State did not rely solely on appearance to establish the identity of the white powder found in Mr. Sheridan's possession. In addition to appearance, the State relied on Mr. Sheridan's admission that the substance was methamphetamine. The State also offered testimony that the police were told by a confidential informant that Mr. Sheridan had methamphetamine he was going to trade for marijuana. I believe that this combination of circumstantial evidence was sufficient to allow a jury to conclude beyond a reasonable doubt that the substance contained in both baggies was methamphetamine. The fact that Mr. Sheridan did not specifically state "I have methamphetamine in two baggies" or "I only have methamphetamine" is a factor the jury can weigh when it considers the evidence. In my view, given this circumstantial evidence, a jury could conclude beyond a reasonable doubt that each package contained methamphetamine. In fact, I believe that such a conclusion is more reasonable than a conclusion that one baggie contained methamphetamine and one contained an innocent white powder.
In addition to disagreeing with the majority's resolution of the ultimate issue in *644 this case, I have other differences with the majority that I believe need to be addressed. Contrary to what the majority states, I do not "assume that the two packages each contained methamphetamine because the accused said he had an ounce of the drug." In my view, Mr. Sheridan's statement regarding weight is immaterial. The aggregate weight of the substance possessed by Mr. Sheridan is undisputedwhat is disputed is the identity of the substance he possessed. If the contents of each baggie had been identified by chemical testing, rather than through circumstantial evidence, nothing in Ross or Safford would preclude the State from relying on the aggregate weight of the baggies to establish a trafficking amount of methamphetamine.
The State's procedure did not, as the majority suggests, create an "assumption as to the amount without the necessary proof." The assumption that one must make as a result of the State's procedure is as to the identity of the substance, not the weight. The State offered direct evidence to establish weight. The issue is not whether the State's procedure sufficiently proved the weight of the substance, but whether it was sufficient to establish the identity of the substance in each baggie.
The majority also suggests that I am attempting to extend Pama to permit the use of circumstantial evidence to prove weight. However, as explained above, weight is not the issue in this case. The State established the aggregate weight of the substance by direct testimony from the chemist who weighed and tested the substance. I am relying on Pama for the proposition that the State may use circumstantial evidence to prove the identity of the substance in the two baggies. While the majority states that it does not disagree that identity can be established by circumstantial evidence, it nevertheless refuses to apply the rule in this case because Mr. Sheridan simply said he had methamphetamine instead of being more specific.
Although it is dicta, the majority suggests that Ross requires that "the contents of each baggie ... be weighed and tested separately, and, if found to be the same controlled substance, the weights combined." While I agree that Ross requires testing of each package before they are combined to obtain an aggregate weight, I do not read Ross to require that each package be separately weighed. See Ross, 528 So.2d at 1239-40 (stating that the State has the burden to prove "that each of the subject packets contains cocaine or a mixture thereof which in the aggregate satisfies the ... statutory weight"). In Safford, this court did not read Ross to impose such a requirement, instead stating that the flaw in the State's case was "the chemist's failure to test each individual packet before the contents were combined and weighed...." Safford, 708 So.2d at 677.[2] The majority also makes reference to providing the defense with an opportunity to test the alleged drugs before they are commingled. Because Ross imposes no such requirement and Mr. Sheridan has not raised that issue, I do not believe that we should suggest in this opinion that such a requirement exists.
NOTES
[1] Even if the arresting officer had performed a Valtox test on both of the baggies for the presence of methamphetamine before commingling the contents, the proof would still have been legally insufficient. See Smith v. State, 835 So.2d 387 (Fla. 2d DCA 2003) (reversing a conviction for trafficking when the contents of both baggies field-tested positive for the presence of methamphetamine prior to commingling).
[2] In Smith v. State, 835 So.2d 387, 388 (Fla. 2d DCA 2003), another case involving commingling separate packages of contraband, this court notes that there was "no evidence as to the weight of the contents of either baggie." To the extent that this could be read to require that each package be weighed individually, I believe it imposes a requirement not found in Ross.