995 So.2d 552 (2008)
Mario SINCLAIR, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D06-2575.
District Court of Appeal of Florida, Third District.
September 3, 2008.
Rehearing and Rehearing En Banc Denied December 18, 2008.
*553 Bennett Brummer, Public Defender, and Manuel Alvarez, Assistant Public Defender, for appellant.
Bill McCollum, Attorney General, and Lane Hodes, Assistant Attorney General, for appellee.
Before GERSTEN, C.J., and SHEPHERD and CORTIÑAS, JJ.
SHEPHERD, J.
Appellant, Mario Sinclair, challenges a trial court ruling that he violated his probation by being arrested for possession of cocaine with intent to sell. The substantial issue on appeal is whether the State adequately identified the substance seized as crack cocaine. The identification was made through the testimony of the arresting officer, Miami-Dade Police Sergeant D. Kerr.[1] It was the only non-hearsay testimony supporting the adjudication. Arnold v. State, 497 So.2d 1356 (Fla. 4th DCA 1986) ("While hearsay is admissible in probation proceedings, proof of a violation must be supported by other competent non-hearsay evidence."). We conclude that the substance was adequately identified. Accordingly, we affirm the violation.

*554 FACTS
This case arises out of the arrest of the defendant, Mario Sinclair, in a local hotel parking lot for possession of cocaine with intent to sell. At the time of the arrest, Sinclair was on probation. Upon the filing by his probation officer of an affidavit of violation of probation, the State proceeded to schedule a hearing on the matter. In preparation for the hearing, the State had the substance laboratory tested. A chemical analysis confirmed the substance was cocaine. Both the Office of the State Attorney and Sergeant Kerr were provided a copy of a written report of the laboratory test. On the day of Defendant's probation violation hearing, however, the State was unable to produce the report. The State therefore sought to identify the substance through the testimony of Sergeant Kerr. His testimony was as follows:
Q When he was placed [under] arrest did you take anything into evidence with the officerdid the officer place anything into evidence?
A When I went over toI actually placed the defendant into [sic] handcuffs.
Q Okay.
A [Detective] Soccorra had him contained on the fence. When I walked over Soccorra had already recovered cocaine. I put the defendant in the handcuffs and then took the cocaine from the Lieutenant.
Q Is the cocaine that I'm showing you right now the cocaine that was recovered from the defendant?
A Yes. It was like aI remember it being a half of aa cookie. Want me to describe cookie?
Q Yes.
A A cookie of cocaine is like awhen you cook up cocaine into crack it becomeslooks like a cookie. And it was a half of a cookie broken into pieces. So it wasn't like cocaine in a bag, individual baggies of cocaine. It was a larger cellophane wrapper, like that with a half of cocaine cooked.
....
Q So you collected the cocaine and that's the cocaine that was taken from the defendant?
A Yes, sir.
....
Q Officer, how do you know the substance you collected was cocaine?
A It's consistent with all of the cocaine I've seen. The look, color, malacoid.
Q How many years have you been a law enforcement officer?
A I've been an officer for eight years.
Q How many times have you handled cocaine prior to this arrest?
A I worked street level narcotics. I handle cocaine every single day that I work.
Q Is there any doubt in your mind that what was collected from the defendant is cocaine?
A There was no doubt in my mind. Especially after seeing the lab report.
After hearing this testimony and the other evidence presented by the State, the court stated, "the police officer came in and he clearly identified the substance that was before the Court[,]" and that:
[t]he only thing that would be missing would be the report coming in, and the cop testified that he independently knows that what the item is[,] and the Court finds that he does have sufficient experience to make that determination. In [addition] to that[,] the cop testified that he saw the report and it tested as cocaine.
The trial court found Defendant had violated his probation.
*555 Defendant argues the State's evidence was insufficient to sustain a revocation of probation because the only non-hearsay testimony presented was Sergeant Kerr's opinion that the suspect substance was crack cocaine. We hold that a sufficiently experienced officer may opine regarding the identity of crack cocaine.[2]

ANALYSIS
Although the usualand certainly the preferredmethod of drug identification is chemical analysis, non-chemical identification of some controlled substances is permissible in most state and federal courts. See Robinson v. State, 348 Md. 104, 702 A.2d 741, 745 (1997) (citing numerous state and federal cases allowing identification of controlled substances by non-chemical means). Adhering to the majority view, the courts of this stateincluding our ownhave long been willing to allow experienced law enforcement personnel to identify substances such as marijuana without resorting to chemical analysis. Pama v. State, 552 So.2d 309, 311 (Fla. 2d DCA 1989) ("It is not necessary for the [S]tate to prove the identification of marijuana by chemical or scientific means."); A.A. v. State, 461 So.2d 165, 166 (Fla. 3d DCA 1984) (permitting officer with "four years in a special narcotics unit" to identify marijuana based on sight, smell, and packaging of the marijuana with "rolling papers"); Dean v. State, 406 So.2d 1162, 1164 (Fla. 2d DCA 1981) (permitting a police officer with "substantial experience in narcotics investigation" to identify marijuana); State v. Raulerson, 403 So.2d 1102, 1103 (Fla. 5th DCA 1981) (allowing an individual who never before had contact with marijuana to identify its odor again from an assembled group of otherwise unfamiliar materials).
While marijuana identification by nonscientific means is a settled issue in Florida law, acceptance by Florida courts of nonscientific crack cocaine identification is a phenomenon of more recent vintage. However, just eight years ago, in Brooks v. State, 762 So.2d 879 (Fla.2000), the Florida Supreme Court clearly signaled that in a proper case, a lay personin Brooks, a drug dealer possessed of "specialized knowledge" within the meaning of section 90.702 of the Florida Evidence Codemay express an opinion in the form of expert testimony regarding the identity of crack cocaine. Id. at 893 (citing, inter alia, A.A., 461 So.2d at 165-66). The Court noted in Brooks that the drug dealer,
(1) Michael Johnson[,] was an experienced crack cocaine dealer, having sold that drug almost every day for approximately two years; (2) Johnson never sold bad, defective, or fake crack; (3) Johnson obtained the sandwich bag which contained the substance from his long-time friend and associate, Darryl Jenkins, who was a crack cocaine user and dealer who did not sell bad, defective, or fake crack; (4) Johnson had sold drugs earlier that evening; (5) Jacqueline Thompson, who brought Brooks and Brown to the location for the purchase of rocks of crack cocaine, regularly purchased *556 that substance from Johnson at the Jenkins home; and (6) Johnson had an opportunity to examine and inspect the rocky substance contained in the sandwich bag that he obtained from Darryl Jenkins....
Brooks, 762 So.2d at 893-94. If a drug dealer with these credentials is qualified to provide an opinion with respect to the identity of a substance such as crack cocaine, we see no reason why an officer, such as Sergeant Kerr, who has worked "street level narcotics" and handled cocaine "every single day," should notafter a sufficient predicate has been laidbe permitted to express his opinion concerning the identity of a substance he obtained at a crime scene possessing a distinctive set of physical characteristics, as does crack cocaine. We find that the trial court did not abuse its discretion in allowing and accepting the non-hearsay testimony of Sergeant Kerr to sustain the violation in this case.
We hasten to add that not all controlled substances are amenable to identification by nonscientific means, and not all witnesses are capable of making reliable identifications. Our cases and those from other jurisdictions indicate that for such a lay identification to be proffered, the suspect substance must possess a distinctive set of physical characteristics that render it amenable to non-chemical identification, and the witness identifying the substance must possess an experiential background sufficient for the court to conclude that his or her identification is reliable. Compare A.A., 461 So.2d at 165 and Brooks, 762 So.2d at 892 with Sharpe v. State, 589 So.2d 963, 963-64 (Fla. 3d DCA 1991) (reversing probation violation where neither a laboratory analysis nor "any witness identif[ied] the substances as cocaine based on training or experience") and Weaver v. State, 543 So.2d 443, 443 (Fla. 3d DCA 1989) (reversing a probation violation where officer testified "he believed the white powder was heroin but that he did not use his sense of smell, taste, or touch to form his opinion"); see also United States v. Robinson, 144 F.3d 104, 108 (1st Cir.1998) (permitting detective to opine that cocaine-based substance was crack cocaine as distinguished from other forms of cocaine); Griffin v. Spratt, 969 F.2d 16, 18 (3d Cir.1992) (holding valid an experienced prison guard's non-chemical identification of fermented beverage based on liquid "foaming at the top" and "a strong stench of rotten fruit and smell of alcohol"); United States v. Walters, 904 F.2d 765, 770 (1st Cir.1990) ("[S]cientific analysis or expert testimony is not required to prove the illicit nature of a substance, and identification of a substance as a drug may be based on the opinion of a knowledgeable lay person."); United States v. Paiva, 892 F.2d 148, 157 (1st Cir.1989) ("Although a drug user may not qualify as an expert, he or she may still be competent, based on past experience and personal knowledge and observation to express an opinion as a lay witness that a particular substance perceived was cocaine or some other drug."); United States v. Dolan, 544 F.2d 1219, 1221 (4th Cir.1976) ("[L]ay testimony and circumstantial evidence may be sufficient, without the introduction of an expert chemical analysis, to establish the identity of the substance involved in an alleged narcotics transaction."); Copeland v. State, 430 N.E.2d 393, 396 (Ind.Ct.App.1982) (finding that trial court did not abuse its discretion in allowing experienced drug addict to testify as an expert witness regarding identity of dilaudid); State v. Rubio, 110 N.M. 605, 798 P.2d 206, 208 (1990) (determining witness's "experience as a successful cocaine dealer qualified him to give his opinion that the substance was cocaine"); State v. Freeman, 185 N.C.App. 408, 648 S.E.2d 876, 881-82 (2007) (permitting *557 an eight-year veteran police officer who had "come into contact with crack cocaine between 500 and 1000 times" to identify crack cocaine in court); State v. Hernandez, 85 Wash.App. 672, 935 P.2d 623, 625 (1997) (stating that "a witness who demonstrates an expertise `acquired either by education or experience' in [drug identification] may give an opinion as to the identity of the substance"); see generally Michael D. Blanchard & Gabriel J. Chin, Identifying the Enemy in the War on Drugs: A Critique of the Developing Rule Permitting Visual Identification of Indescript White Powder in Narcotics Transactions, 47 Am. U. L. Rev. 557 (1998).
Finally, as we have said previously in the context of non-chemical identification of other controlled substances by qualified law enforcement personnel, "the credence and weight to be given [such] testimony remain[s] in the final analysis with the judge in its (sic) role as a finder of fact." A.A., 461 So.2d at 167.
Affirmed.
NOTES
[1] Both the transcripts and the parties refer to Sergeant Kerr as "Sergeant Kirt." However, the docket sheet from Defendant's September 21, 2006 probation violation hearing refers to the officer testifying that day as "D. Kerr."
[2] The State also argues for affirmance on the ground that there was a lack of contemporaneous objection to the testimony of Sergeant Kerr. Although the defense did not object initially to Sergeant Kerr's testimony, counsel objected to the testimony after it was offered and during the same line of questioning. See Jackson v. State, 451 So.2d 458, 460 n. 1 (Fla. 1984). This is sufficient here, especially because defense counsel no doubt expected the State to produce and properly place into the record the laboratory report as the non-hearsay evidence supporting the violation. At the same time, we conclude that the defendant failed to preserve his point on appeal that Sergeant Kerr was insufficiently trained and experienced in identifying controlled substances. See Johnston v. State, 497 So.2d 863, 870 (Fla. 1986).