# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

—————————————————

PRYCE M. CAMPBELL, III,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2023-0651

—————————————————

March 26, 2025

Appeal from the Circuit Court for Hillsborough County; Christine Marlewski and Paul L. Huey, Judges.

Blair Allen, Public Defender, and A. Victoria Wiggins, Assistant Public Defender, Bartow, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and Krystle Celine Cacci, Assistant Attorney General, Tampa, for Appellee.

SLEET, Chief Judge.

Pryce Campbell challenges his judgment and sentence for trafficking in cannabis between twenty-five and two thousand pounds. On appeal, Campbell argues that the trial court erred in denying his motion for judgment of acquittal. Because the State failed to prove that the quantity of the substance met the statutory weight threshold, we

reverse the judgment and sentence. We remand for entry of a judgment for the lesser-included offense of felony possession of cannabis and for resentencing.

On July 13, 2022, Tampa International Airport Police Department selected to track United Flight 314 out of Denver, Colorado, as part of a narcotics interdiction. Three detectives and a K-9 were part of the drug interdiction team monitoring flights originating from Colorado. Sometime shortly after United Flight 314 arrived, the K-9 was engaged to perform a "run" on three trailers of luggage and ultimately alerted to two identical large soft-sided duffle bags. The bags were then placed on the baggage claim conveyor belt to allow the detectives to intercept whoever picked up the bags. When Campbell claimed the two bags, he was stopped before exiting, and he identified himself as the owner of the two bags. Campbell was free to leave, but the detectives seized his two bags and waited for a warrant prior to searching them.

When the warrant arrived the following day, a search of the bags revealed two large vacuum-sealed packages each containing twenty-five identically packaged vacuum-sealed bundles of a green, leafy substance. The larger vacuum-sealed package was taken out of each duffle bag, and each package weighed 32.57 pounds. The substance in the fifty smaller bundles could not be identified by sight or smell alone, but because the detectives suspected the substance to be cannabis, a sample was taken from two of the smaller individual bundles, one from each duffle bag, and sent off to the Florida Department of Law Enforcement (FDLE) lab to be tested. Notably, a sample was not taken from each of the fifty individual bundles. The analyst ultimately tested only one of the samples, which weighed 24.47 grams plus or minus 0.15 grams, and concluded that the substance contained cannabis.

Thereafter, Campbell was called back to the airport and arrested. The State charged him with one count of trafficking in cannabis in an amount in excess of twenty-five but less than two thousand pounds. In February 2023, he proceeded to trial, during which he testified that to his knowledge the bags contained hemp. He explained that he met up with a guy in Oregon who had an excess amount of hemp and purchased fifty bundles for $50 apiece. Campbell denied purchasing or possessing marijuana, explaining that to do so would have cost him over $1,000 per bundle instead of the $50 he paid. Ultimately, a jury found him guilty as charged, and he was sentenced to three years' imprisonment. This appeal ensued, and Campbell argues that the trial court erred in denying his motion for judgment of acquittal (JOA). We agree.

"We review de novo the denial of a JOA motion." *Drejka v. State*, 330 So. 3d 1055, 1059 (Fla. 2d DCA 2021). "[T]he concern on appeal must be whether, after all conflicts in the evidence and all reasonable inferences therefrom have been resolved in favor of the verdict on appeal, there is substantial, competent evidence to support the verdict and judgment." *Figueroa-Sanabria v. State*, 366 So. 3d 1035, 1052 (Fla. 2023) (quoting *Tibbs v. State*, 397 So. 2d 1120, 1123 (Fla. 1981)). In analyzing the sufficiency of the evidence, we must determine "whether the State presented competent, substantial evidence to support the verdict." *Bush v. State*, 295 So. 3d 179, 200 (Fla. 2020). "We must view the evidence in the light most favorable to the State and ask whether a rational trier of fact could have found the existence of the elements of the crimes beyond a reasonable doubt." *Hathaway v. State*, 309 So. 3d 723, 725 (Fla. 1st DCA 2021) (citing *Bush*, 295 So. 3d at 201).

To support a conviction for trafficking in cannabis in an amount greater than twenty-five pounds but less than two thousand pounds, the

3

State must prove three essential elements beyond a reasonable doubt: (1) the defendant knowingly sold, purchased, manufactured, brought into the state, or actively or constructively possessed a certain substance; (2) the substance was cannabis; and (3) the quantity of the substance met the statutory weight threshold. Fla. Std. Jury Instr. (Crim.) 25.7(a) (2023); *see also* § 893.135(1)(a)1, Fla. Stat. (2022). On appeal, Campbell challenges only the third element, contending that the State failed to prove the requisite amount for trafficking because a sample from only one of the fifty packages was chemically verified as cannabis. Specifically, he points to the changes to Florida and federal law legalizing hemp, which he argues required law enforcement in this case to chemically test every individually wrapped package of the green, leafy substance seized to establish the statutory threshold weight for trafficking in a controlled substance. Based on the recent changes to the law, we agree.

Cannabis is classified as a Schedule I controlled substance. § 893.03(1)(c)7, Fla. Stat. Up until July 2019, cannabis was defined to mean "all parts of any plant of the genus *Cannabis*, whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds or resin." § 893.02(3), Fla. Stat. (2018). Because marijuana and hemp are both varieties of the plant species *Cannabis sativa*, which is within the larger genus *Cannabis*, this definition included marijuana and hemp. *See* David V. Patton, J.D., *A History of United States Cannabis Law*, 34 J.L. & Health 1, 4 (2020) (describing the genus *Cannabis* and the species within it). And at the time, only medical marijuana was excluded from the definition. § 893.02(3). However, with the passage of the 2018 Farm Bill in December 2018, federal law

4

changed to exclude hemp from the federal definition of marijuana and authorized the creation of a nationwide regulatory framework to regulate the production of hemp. *See* 21 U.S.C. § 802(16)(B) (2018) (removing "industrial hemp" from the federal definition of marijuana); 7 U.S.C. § 1639r. (2018) (authorizing regulatory framework); *see also* Agricultural Improvement Act of 2018, Pub. L. No. 115-334 § 10114(a) (codified at 7 U.S.C. § 1639o note) (including a rule of construction in the 2018 Farm Bill stating that "[n]othing in this title or an amendment made by this title prohibits the interstate commerce of hemp or hemp products").

In line with this authorization, in July 2019, the Florida Legislature enacted the "State hemp program," which made the possession of hemp legal in Florida. § 581.217, Fla. Stat. (2020); *see also* ch. 2019-132, § 1, Laws of Florida. The legislature stated that "[h]emp is an agricultural commodity" and that "[h]emp-derived cannabinoids . . . are not controlled substances or adulterants." § 581.217(2)(a)-(b). As a result, the legislature also changed the definition of cannabis to exclude hemp. § 893.02(3), Fla. Stat. (2020). Therefore, based on these statutory changes, cannabis is legal in Florida when it is hemp, which has a delta-9-tetrahydrocannabinol (THC) concentration below 0.3 percent. *See* § 581.217(3)(d), Fla. Stat. (2022); *see also Hatcher v. State*, 342 So. 3d 807, 810 n.3 (Fla. 1st DCA 2022) (explaining that the difference between hemp and illegal cannabis is the "psychoactive component").

With this as our backdrop, we must determine if the State's evidence in this case, which consisted of FDLE lab test results, constituted sufficient evidence that Campbell possessed trafficking amounts of cannabis.

The Florida trafficking statute differentiates among criminal offenses concerning controlled substances based on the quantity or

5

weight of the substance involved. *See* § 893.135. Thus evidence in trafficking cases often includes the results of chemical and scientific tests to determine the nature of the substance and the quantity or weight. And in certain instances, the experts who conduct these tests may use random sampling rather than testing every container where the suspect substance is found. *See* § 893.105(1) (providing for sample testing of controlled substances).

For purposes of cannabis, trafficking requires a minimum weight of twenty-five pounds. § 893.135(1)(a)(1). To establish the threshold weight, the subject cannabis need not be contained in a single twenty-five-pound package. Instead, it may be contained in separately wrapped packages which, in toto, weigh twenty-five pounds. *See Kenny v. State*, 382 So. 2d 304, 304-05 (Fla. 1st DCA 1978). However, the State has the burden of proof and therefore must establish that each package contains cannabis which in the aggregate satisfies the threshold weight. *See Sheridan v. State*, 850 So. 2d 638, 640 (Fla. 2d DCA 2003) (explaining that "the State bears the burden of proof as to the amount" in a trafficking case); Fla. Std. Jury Instr. (Crim.) 3.7. Thus, we must first address proof regarding the identification of the substance which in turn affects the proof concerning the weight of the substance.

Decades ago, this court recognized that "[i]t is not necessary for the [S]tate to prove the identification of marijuana[1] by chemical or scientific means." *Pama v. State*, 552 So. 2d 309, 311 (Fla. 2d DCA 1989). Rather, it could do so through "circumstantial evidence such as the substance's appearance, odor, and packaging." *Id.*; *see also Sheridan*,

---

[1] Although this court referred to the substance as "marijuana," we refer to it as "cannabis" because that is the controlled substance's defined term in the Florida Statutes. *See* § 893.02(3).

850 So. 2d at 641 ("[C]ase law permits circumstantial evidence to be used to establish the identity of certain controlled substances such as marijuana. . . ."); *State v. Raulerson*, 403 So. 2d 1102, 1103 (Fla. 5th DCA 1981) ("[I]n addition to the scientific tests, other facts tending to show the identity of the substance, such as its appearance and smell and circumstances under which it was seized, are probative and can meet the State's burden of proof." (quoting *Turner v. State*, 388 So. 2d 254, 257 (Fla. 1st DCA (1980)).

Indeed, courts have long accepted the identification of marijuana by experienced law enforcement personnel without relying on chemical or scientific testing. *Sinclair v. State*, 995 So. 2d 552, 555 (Fla. 3d DCA 2008) (recognizing that "marijuana identification by nonscientific means is a settled issue in Florida law"); *Pama*, 552 So. 2d at 311 (permitting "an experienced law enforcement officer" to identify marijuana based on visual examination); *Dean v. State*, 406 So. 2d 1162, 1164 (Fla. 2d DCA 1981) (permitting a police officer with "substantial experience in narcotics investigation" to identify marijuana); *A.A. v. State*, 461 So. 2d 165, 166 (Fla. 3d DCA 1984) (permitting officer with "four years in a special narcotics unit" to identify marijuana based on sight, smell, and packaging of the marijuana with "rolling papers"). In fact, in 2013 the Florida Supreme Court explicitly carved out an exception for marijuana with respect to the requirement that the State chemically test every individually wrapped packet of suspect substance to establish the requisite statutory threshold weight for trafficking. *Greenwade v. State*, 124 So. 3d 215, 229 (Fla. 2013). The court explained that where a substance does not pose "an identifiable danger of misidentification," chemical testing was not required. *Id.*

7

Until recently, however, all forms of cannabis were illegal—neither medical marijuana nor hemp were excluded from the definition of cannabis. Thus, any green, leafy substance seized that had the well-known characteristic appearance and smell of cannabis was illegal, and the unique appearance, texture, and odor of cannabis was susceptible to being readily identifiable by experienced law enforcement officers. *See Turner*, 388 So. 2d at 257 ("[N]umerous cases hold that marijuana is not difficult to characterize without chemical analysis and that testimony of officers who have had experience searching for and identifying marijuana is sufficient." (quoting *State v. Otswald*, 591 P.2d 646, 652 (Mont. 1979))); *Mishmash v. State*, 423 So. 2d 446, 447 (Fla. 1st DCA 1982) ("Law enforcement officials trained in the detection of contraband have no difficulty recognizing both the smell and packaging of marijuana."). However, after the legalization of hemp at the federal and state levels, this is no longer the case, and *Greenwade*'s exception for cannabis is no longer applicable. Legal hemp and illegal cannabis are indistinguishable by appearance, texture, and odor, such that chemical testing to determine the THC content is now needed to avoid misidentification. If the THC concentration is greater than 0.3%, the substance is illegal cannabis, but if it is less than 0.3%, the substance is legal hemp. *See* § 581.217(3)(d).

In this case, Campbell repeatedly testified that he purchased fifty bundles of hemp for $50 apiece in Oregon and that to his knowledge the duffle bags contained hemp, not illegal cannabis. Every witness who testified for the State admitted that they were unable to identify by appearance or odor alone whether the substance found in Campbell's duffle bags was illegal cannabis or legal hemp. The detective handling the K-9 testified that his K-9 could not identify whether the duffle bags

8

contained cannabis, rather it could only alert to odors of illicit substances in general. The detective who stopped Campbell at baggage claim testified that he could not distinguish cannabis from hemp by sight or smell alone. In fact, the only witness able to affirmatively identify the substance as illegal cannabis was the lab analyst who testified that she tested only one of the two samples she was given and that the sample she tested weighed 24.47 grams plus or minus 0.15 grams.[2] Thus, because she only tested a sample from one bundle, the State only identified the contents of one bundle for purposes of establishing the quantity of cannabis and whether it met the statutory weight threshold for trafficking.

Prior to the legalization of hemp, when cannabis possessed a distinctive set of physical characteristics that rendered it amenable to nonchemical identification and there was no identifiable danger of misidentification, it was not necessary to test a sample of the substance in each separate packet in order to draw an inference that the entire amount of suspect drugs was illegal cannabis. Now, however, because there is an identifiable danger of misidentification between legal hemp and illegal cannabis, where the contents of multiple packages are to be considered in proving the quantity of illegal cannabis, the State can no longer rely solely on appearance and odor to extend an inference of illegal cannabis to the remaining untested packets and must chemically test each packet of green, leafy substance to meet the threshold weight

---

[2] Notably, the lab analyst also testified that she could not distinguish illegal cannabis from legal hemp by appearance or odor and that the initial two tests she completes—a microscopic examination and a Duquenois-Levine color test—do not allow her to distinguish between legal hemp and illegal cannabis because they do not identify the THC content.

required for trafficking.[3]  To hold otherwise and allow the State to rely on the identification of similar packages of a green, leafy substance by appearance and odor alone would undermine a defendant's presumption of innocence and erroneously negate the State's burden to prove the identity and weight of the alleged substance.[4]

In this case, because only one bundle from Campbell's bags was chemically verified as illegal cannabis and an inference of illegal cannabis could not be extended to the remaining untested bundles, the State did not establish beyond a reasonable doubt that each of the remaining bundles contained illegal cannabis for purposes of proving that the evidence seized met the requisite jurisdictional amount required for conviction under the trafficking statute.  Therefore, we conclude that the trial court erred in denying Campbell's motion for judgment of acquittal at trial, and Campbell's conviction for trafficking in cannabis must be reversed.  The State did establish, however, that Campbell was in possession of illegal cannabis weighing *less* than twenty-five pounds based on the 24.47-gram sample from one bundle which tested positive for cannabis.  *See* §§ 893.13(6)(a), 893.03(1)(c).  Accordingly, we remand

---

[3] We note that our holding does not extend to cases where circumstantial evidence other than appearance and odor alone may be sufficient to prove that all packages contain illegal cannabis.

[4] A defendant's presumption of innocence "stays with the defendant as to each material allegation in the [information][indictment] through each stage of the trial unless it has been overcome by the evidence to the exclusion of and beyond a reasonable doubt."  Fla. Std. Jury Instr. (Crim.) 3.7.  To overcome the presumption, "the State has the burden of proving the crime with which the defendant is charged was committed and the defendant is the person who committed the crime."  *Id.*  And unless the defendant is relying on an affirmative defense for which he or she has the burden of persuasion, "the defendant is not required to present evidence or prove anything."  *Id.*

to the trial court with directions to reduce Campbell's conviction to felony possession of cannabis and to resentence him accordingly.

Reversed and remanded.


KELLY and VILLANTI, JJ., Concur.

_____

Opinion subject to revision prior to official publication.