MARSTILLER, J.
 

 Appellant pled guilty to possession of a firearm by a convicted felon, possession of controlled substance paraphernalia, and resisting an officer without violence. A jury found him guilty of trafficking in cocaine in amount more than 200 grams, but less than 400 grams. The sole issue Appellant raises is whether the trial court should have granted his motion for judgment of acquittal on the cocaine trafficking charge because the state combined, tested and weighed the contents of nine small bags found in his possession instead of testing each bag for cocaine before commingling and weighing their contents. We affirm the conviction.
 

 Detective Donald Bishop and other officers from the Jacksonville Sheriffs Office
 
 *372
 
 executed a search warrant at a residence in Jacksonville. There, they found Appellant sitting behind a table in the garage and, after thwarting his attempt to escape, they placed him in custody. Once detained, Appellant told Detective Bishop, “What you are looking for is in the garage.” He directed the detective back to the garage and to the table behind which he had been sitting. On the table was a digital scale, and beside the table was a green bag. Appellant admitted the bag contained cocaine. Lying atop the bag was a spoon with cocaine residue on it. And inside the bag Detective Bishop found nine powder-filled one-ounce plastic baggies. After Detective Bishop read Appellant his Miranda
 
 [1]
 
 rights, Appellant admitted the cocaine was his.
 

 Every baggie was field tested before transfer to the Sheriffs Office property room. Once there, they were emptied and each baggie put in its own envelope. According to Detective Bishop, it is standard procedure to combine the contents of individual packets for subsequent lab testing.
 

 FDLE
 
 [2]
 
 forensic chemist, Dr. Katherine Warniment, received one sealed Ziploc bag containing an amount of off-white powder for testing to identify any controlled substances in the powder. Chemical tests she performed confirmed the powder contained cocaine. She also determined the substance in the Ziploc bag weighed 234.5 grams. Dr. Warniment did not — and does not — test for purity because the law does not require the lab to quantify the amount of cocaine in a given sample.
 

 Indeed, under section 893.135(l)(b)l, Florida Statutes (2009):
 

 Any person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more of cocaine, as described in s. 893.03(2)(a) 4.,
 
 or of any mixture containing cocaine,
 
 but less than 150 kilograms of cocaine
 
 or any such mixture,
 
 commits a felony of the first degree, which felony shall be known as “trafficking in cocaine,”.... If the quantity involved:
 

 [[Image here]]
 

 b. Is 200 grams or more, but less than 400 grams, such person shall be sentenced to a mandatory minimum term of imprisonment of 7 years, and the defendant shall be ordered to pay a fine of $100,000.
 

 (emphasis added). The Florida Supreme Court has said that in deciding to penalize possession of mixtures or compounds containing cocaine, “the legislature reasonably could have concluded that a mixture containing cocaine could be distributed to a greater number of people than the same amount of undiluted cocaine and thus could pose a greater potential for harm to the public.”
 
 State v. Yu,
 
 400 So.2d 762, 765 (Fla.1981). Keeping in mind this policy decision by the legislature, we consider whether the State produced evidence that Appellant possessed between 200 and 400 grams of cocaine sufficient to survive a motion for judgment of acquittal.
 

 The Third District first held in
 
 Ross v. State,
 
 528 So.2d 1237, 1239 (Fla. 3d DCA 1988), that where “the subject cocaine or mixture [is] contained ... in a series of separately wrapped packets,” the State must “establish that each of the subject packets contains cocaine or a mixture thereof which in the aggregate satisfies the above statutory weight.” In that case, law enforcement officers seized from the appellant a brown paper bag holding two bundles of plastic packets containing white
 
 *373
 
 powder. One bundle contained 36 packets; the other contained 56 packets. The crime lab chemically tested two of the 92 packets, one from each bundle, and determined both contained cocaine. The lab technician then combined the contents of all 92 packets and obtained a total weight for the contents of 38.8 grams. On that evidence, a jury found the appellant guilty of trafficking in cocaine. The Third District reversed the conviction, concluding that the State failed to prove the appellant possessed 28 grams or more of cocaine or a mixture of cocaine because only two of the seized packets were tested.
 
 Id.
 
 The court reasoned:
 

 [T]he fact that one or two packets containing cocaine are found among other packets containing similar-looking white powder is no assurance that the latter untested packets also contain cocaine in view of (1) the vast number of other chemical compounds which have á similar white powdery appearance, and (2) the fact that the material in the untested packets was not commingled with the material in the tested packets.
 

 Id.
 
 at 1239-40. The Third District later employed this reasoning to affirm an order reducing heroin trafficking charges to simple possession where the white powder was contained in capsules, but only a random sample of capsules were chemically tested before commingling the contents of all capsules for weighing.
 
 See State v. Clark,
 
 538 So.2d 500, 501 (Fla. 3d DCA 1989).
 

 Applying the rationale in
 
 Ross,
 
 the Second District in
 
 Safford v. State,
 
 708 So.2d 676, 677 (Fla. 2d DCA 1998), reversed a cocaine trafficking conviction and reduced it to simple possession where the contents of 40 foil packets containing white powder were combined into one mixture before chemical testing. In
 
 Sheridan v. State,
 
 850 So.2d 638 (Fla. 2d DCA 2003), the court ruled similarly on an amphetamine trafficking conviction. There, sheriffs deputies found two bags containing white powder in the car the appellant was driving. One or both field tested positive for methamphetamine, leading the appellant to admit he was planning to trade one ounce of methamphetamine for two pounds of marijuana. The contents of the bags were combined and sent to the lab where chemical tests confirmed the field test results. The combined contents weighed 23 grams, exceeding the 14 gram statutory threshold for trafficking in amphetamine. The court condemned the commingling procedure and opined that it “created an assumption as to the amount without the necessary proof. Thus, the evidence of trafficking was legally insufficient and should not have gone to the jury.”
 
 Id.
 
 at 640.
 
 See also Smith v. State,
 
 835 So.2d 387 (Fla. 2d DCA 2003).
 

 We respectfully decline to follow
 
 Ross, Safford
 
 and
 
 Sheridan
 
 because, in our view, their apparent bright line rule creates an untenable distinction between cases involving multiple packages of suspicious white powder and cases involving just one package. To illustrate, if in this case Detective Bishop had found one large plastic bagful of powder inside the green bag Appellant led him to, there would be no question that testing a sample and weighing the powder would yield sufficient evidence to prove Appellant possessed more than 200 grams of cocaine or a mixture of cocaine. But take that same bagful of powder and split it into nine small saleable packets, and
 
 Ross
 
 et al. hold that to prove the weight element of trafficking, the State now must test a sample from each packet, determine which contain cocaine, and weigh only those — even if presumptive field testing detects cocaine in every packet, see
 
 Smith
 
 at 388, and other circumstances, such as the way the packets are bundled together (Ross) or an admission by the defendant (Sheridan), would permit a jury to reasonably infer all the packets contain an illegal substance.
 

 
 *374
 
 The rationale underlying the so-called rule against commingling, see
 
 Lyons v. State,
 
 807 So.2d 709, 710 (Fla. 5th DCA 2002), is that where several individual packets contain suspected cocaine (or some other contraband in powder form), one or more of the packets might contain some “other chemical compound[ ] which [has] a similar white powdery appearance.”
 
 Ross,
 
 528 So.2d at 1239-40. But we go back to
 
 Yu
 
 and the Legislature’s policy reason for penalizing possession of mixtures or compounds containing cocaine: pure cocaine can be (and assuredly is) diluted with other substances to facilitate broader distribution. This policy, we believe, legitimizes the practice of commingling multiple packets for chemical testing and weighing, where the circumstances attending the discovery and seizure of the packets permit the reasonable conclusion that they contained contraband, and perhaps other substances, to be used in illegal drug distribution.
 

 We find such circumstances present in the instant case. Appellant, whom officers apprehended after executing a residential search warrant, told Detective Bishop, “What you are looking for is in the garage.” There, stored together inside a green bag were the nine individual baggies of white powder. Appellant admitted the bag contained cocaine. On top of the bag was a spoon with cocaine residue on it, and on the table beside the bag was a digital scale — tools of the drug trade. All the seized baggies were field tested before their contents were combined and sent to the FDLE lab. This evidence, together with the positive chemical test performed on the commingled powder, was sufficient for the jury to find Appellant had more than 200 grams of cocaine or a mixture of cocaine in his possession. As Judge Schwartz reasoned in his dissent in
 
 Ross:
 

 It seems to me, as it must have to the jury, eminently reasonable to conclude that the material in the packet randomly selected from each of the two bundles was representative and characteristic of the other ones, which were otherwise identical in every way.... [A] reasonable person could conclude beyond a reasonable doubt that all of the packages in the two bundles contained cocaine. Since both bundles were possessed at the same time by the same person, the defendant Ross, I believe that they were properly added together in order to reach the trafficking threshold....
 

 Ross,
 
 528 So.2d at 1241 (Schwartz, C.J., dissenting in part) (citations omitted);
 
 cf. Lyons,
 
 807 So.2d at 711 (affirming trafficking conviction because, although contents of two “bricks” of powder were commingled before testing and weighing, they were approximately the same size, otherwise similar in appearance, and hidden together in single taped-up Cornflakes box, allowing reasonable inference they both contained mixtures of cocaine).
 

 In sum, for the reasons stated above, we affirm Appellant’s conviction for trafficking in cocaine. We certify conflict with
 
 Ross v. State,
 
 528 So.2d 1237 (Fla. 3d DCA 1988),
 
 Safford v. State,
 
 708 So.2d 676 (Fla. 2d DCA 1998), and
 
 Sheridan v. State,
 
 850 So.2d 638 (Fla. 2d DCA 2003), to the extent those cases hold that the lab’s failure to test each package before commingling to determine weight renders insufficient the State’s evidence of trafficking, notwithstanding other circumstantial evidence of the offense.
 

 AFFIRMED; CONFLICT CERTIFIED.
 

 WETHERELL and SWANSON, JJ., concur.
 

 [1]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 

 [2]
 

 . Florida Department of Law Enforcement