LEWIS, J.
This case is before the Court for review of the decision of the First District Court of Appeal in Greenwade v. State, 80 So.3d 371 (Fla. 1st DCA 2012). The district court certified that its decision is in conflict with the decision of the Third District Court of Appeal in Ross v. State, 528 So.2d 1237 (Fla. 3d DCA 1988), as well as the decisions of the Second District Court of Appeal in Sheridan v. State, 850 So.2d 638 *217 (Fla. 2d DCA 2003), and Safford v. State, 708 So.2d 676 (Fla. 2d DCA 1998). We have jurisdiction. Art. V, § 8(b)(4), Fla. Const.
FACTS
On April 29, 2009, Detective Donald Bishop and other officers from the Jacksonville Sheriffs Office executed a search, warrant at a Jacksonville residence. As the officers walked up the driveway of the residence toward the garage, they observed Baron Greenwade sitting in a chair behind a table inside the garage. In an attempt to elude arrest, Greenwade fled into the house, where he was eventually captured and placed in custody. After he was detained, Greenwade told Detective Bishop, “I know why you’re here. I have been set up. What you are looking for is in the garage.” Greenwade then led Detective Bishop to the table in the garage behind which the officers had observed him sitting when they had initially arrived. On the table was a digital scale, and beside the table was a green bag with a spoon on top covered with a white residue. Green-wade admitted to Detective Bishop that the green bag contained cocaine. Inside the bag, Detective Bishop found nine one-ounce baggies that contained a white powder.[1] After the officers read Greenwade his Miranda[2] rights, he admitted that the contents of the green bag were his.
All nine baggies were individually field tested before they were transferred to the Sheriffs Office property room where each baggie was emptied into nine individual envelopes.[3] Dr. Katherine Warniment, a Florida Department of Law Enforcement (FDLE) forensic chemist, testified during trial that she received one sealed Ziploc bag containing a quantity of off-white powder and was asked to identify any controlled substances in the powder.[4] Dr. Warniment’s chemical testing revealed that the commingled powder contained cocaine. Dr. Warniment also determined that the contents of the Ziploc bag weighed 234.5 grams. Greenwade, 80 So.3d at 372.
Greenwade was charged by information with trafficking in cocaine in an amount more than 200 grams but less than 400 grams, possession of controlled substance paraphernalia, possession of a firearm by a convicted felon, and resisting an officer *218 without violence. Greenwade pled guilty to all of the charges except trafficking. After a jury trial, Greenwade was found guilty of trafficking in cocaine and was sentenced to fifteen years’ incarceration with a mandatory minimum of seven years. The sole issue asserted by Greenwade on appeal was whether the trial court erred by denying his motion for judgment of acquittal on the trafficking charge because the State had combined, tested, and weighed the contents of all of the nine individual baggies found in his possession together instead of chemically testing each baggie for cocaine before commingling and weighing their contents. See Greenwade, 80 So.3d at 372.
The reasoning and conclusion of the decision below can be best explained by first examining our decision in State v. Yu, 400 So.2d 762 (Fla.1981). In Yu, we upheld the constitutionality of section 893.135(l)(b), Florida Statutes (1979) — the trafficking statute relevant to this appeal — against a claim that “penalizing possession of a certain amount of ‘any mixture containing cocaine’ without regard to the percentage of cocaine in the mixture [was] arbitrary, unreasonable, and a violation of due process and equal protection.” Id. at 764. In upholding the constitutionality of the statute, we stated that:
The legislature has broad discretion in determining necessary measures for the protection of the public health, safety, and welfare, and we may not substitute our judgment for that of the legislature as to the wisdom or policy of a legislative act. Section 893.135(l)(b) bears a reasonable relationship to the legitimate state objective of protection of the public health, safety, and welfare. The legislature reasonably could have concluded that a mixture containing cocaine could be distributed to a greater number of •people than the same amount of undiluted cocaine and thus could pose a greater potential for harm to the public.
Id. (emphasis supplied; citation omitted).
The First District framed its analysis based upon the emphasized language above, and stated “[k]eeping in mind this policy decision by the Legislature, we consider whether the State produced evidence •that Appellant possessed between 200 and 400 grams of cocaine sufficient to survive a motion for judgment of acquittal.” Greenwade, 80 So.3d at 372 (emphasis supplied). The First District acknowledged that other district courts have held that when law enforcement officers- discover what is believed to be a controlled substance in a series of separately wrapped packets, the State must first establish that each individual packet contains the controlled substance before combining the packets and weighing the aggregate to determine if the controlled substance meets the requisite statutory weight for trafficking. Id. at 372-73; see also Sheridan, 850 So.2d at 640; Safford, 708 So.2d at 677; and Ross, 528 So.2d at 1239. The First District, however, declined to follow the holdings in Ross, Safford, and Sheridan for two related reasons. See Greenwade, 80 So.3d at 373-74.
First, the district court concluded that the rule delineated in Ross, Safford, and Sheridan “creates an untenable distinction between cases involving multiple packages of suspicious white powder and cases involving just one package.” Greenwade, 80 So.3d at 373. To illustrate the basis for its disagreement with Ross and its progeny, the First District explained:
if in this case Detective Bishop had found one large plastic bagful of powder inside the green bag Appellant led him to, there would be no question that testing a sample and weighing the powder would yield sufficient evidence to prove Appellant possessed more than 200 grams of cocaine or a mixture of cocaine. *219 But take that same bagful of powder and split it into nine small saleable packets, and [Ross and its progeny] hold that to prove the weight element of trafficking, the State now must test a sample from each packet, determine which contain cocaine, and weigh only those — even if presumptive field testing detects cocaine in every packet ... and other circumstances, such as the way the packets are bundled together [] or an admission by the defendant [] would permit a jury to reasonably infer all the packets contain an illegal substance.
Id. (citations omitted).
Second, the district court recognized that the rationale behind requiring each individual packet of white powder to be chemically tested is to prevent law enforcement from combining and weighing the contents of bags that are similar in appearance, but do not contain controlled substances, with bags that do contain controlled substances. Id. at 374. Unpersuaded by this rationale, the First District reasoned that this Court’s interpretation of legislative policy in Yu warranted the development of a new standard to evaluate whether the State may commingle bags that are suspected to contain a controlled substance before chemically testing the aggregate for the presence of that controlled substance. Id. Specifically, the district court held:
Th[e legislative] policy [delineated in Yu ], we believe, legitimizes the practice of commingling multiple packets for chemical testing and weighing, where the circumstances attending the discovery and seizure of the packets permit the reasonable conclusion that they contained contraband, and perhaps other substances, to be used in illegal drug distribution.

Id.

Under this standard, the First District concluded that the contents of the nine individually wrapped baggies were properly commingled before they were chemically tested and. weighed due to the following circumstances that surrounded the discovery of the bags: (1) Greenwade told Detective Bishop that “What you are looking for is in the garagé”; (2) a green bag was located inside the garage which contained nine individually wrapped baggies of white powder; (3) Greenwade admitted that the green bag contained cocaine; (4) on top of the green bag was a spoon with a white powder residue on it; (5) on the table next to the green bag was a digital scale; and (6) all nine baggies were field tested. Id. This evidence, the First District concluded, together with the fact that the commingled powder tested positive for cocaine, was sufficient for the jury to find that Green-wade possessed more than 200 grams of cocaine. Id.
Consequently, the First District affirmed Greenwade’s conviction for trafficking in cocaine and certified conflict with Ross, Safford, and Sheridan “to the extent those cases hold that the. lab’s failure to test each package before commingling to determine weight renders insufficient the State’s evidence of trafficking, notwithstanding other circumstantial evidence of the offense.” Id..
ANALYSIS
Greenwade was convicted under section 893.135(l)(b)l., Florida Statutes (2009), which provides:
Any person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more of cocaine, as described in s. 893.03(2)(a)4., or of any mixture containing cocaine, but less than 150 kilograms of cocaine or any such mixture, *220 commits a felony of the first degree, which felony shall be known as “trafficking in cocaine,” ... If the quantity involved:
[[Image here]]
b. Is 200 grams or more, but less than 400 grams, such person shall be sentenced to a mandatory minimum term of imprisonment of 7 years, and the defendant shall be ordered to pay a fine of $100,000.
To support a conviction for trafficking in cocaine in an amount greater than 200 but less than 400 grams, the State must prove three essential elements beyond a reasonable doubt: (1) the defendant knowingly sold, purchased, manufactured, brought into the state, or actively or constructively possessed a certain substance; (2) the substance was cocaine; and (3) the quantity of the substance met the statutory weight threshold. Hernandez v. State, 56 So.3d 752, 758 (Fla.2010). .
Greenwade does not dispute that the State has established the first two' elements of trafficking, as he admits that he was in possession of cocaine. Rather, Greenwade contends that the trial court should have granted his motion for judgment of acquittal and entered judgment in his favor on the trafficking charge because the State combined, tested, and weighed the contents of the nine baggies found in his possession together before and instead of chemically testing each individual baggie for cocaine before commingling and weighing their total contents in the aggregate. Consequently, the issue before the Court today is whether the State’s failure to independently chemically test each individually wrapped baggie of off-white powder rendered the State’s evidence in support of the third element of weight insufficient as a matter of law.
Standard of Review
The rule of law in Florida is clear that the State is required to prove each and every element of the offense charged beyond a reasonable doubt to establish a prima facie case. See Baugh v. State, 961 So.2d 198, 203-04 (Fla.2007). If the prosecution fails to meet this burden, the case should not be submitted to the jury, and a judgment of acquittal should be granted. Id. at 204. This Court reviews the denial of a motion for judgment of acquittal de novo, and will not reverse a conviction that is supported by competent, substantial evidence. See Caylor v. State, 78 So.3d 482, 492 (Fla.2011). Florida law recognizes that the State has presented sufficient evidence to sustain a conviction if, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt. See id. Consequently, the State is not required to conclusively rebut every possible variation of events which could be inferred from the evidence. See Durousseau v. State, 55 So.3d 543, 557 (Fla.2010) (quoting State v. Law, 559 So.2d 187, 189 (Fla.1989) (footnote omitted)). Once the State meets this threshold burden, it is the responsibility of the jury to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt. Id.
The Law in Florida
The line of Florida cases relevant to the conflict issue effectively began in 1988 with the decision of the Third District in Ross. In Ross, two officers observed the defendant throw a brown paper bag to the ground and then walk away, only to return shortly thereafter to pick the bag up, place something in it, and then throw it back to the ground again. 528 So.2d at 1238. The officers detained the defendant and *221 searched the bag. Id. The officers discovered two bundles of individually wrapped plastic packets containing white powder in the bag. Id. The first bundle contained thirty-six individually wrapped packets, while the second bundle contained fifty-six packets. Id. A forensic chemist tested two of the packets, one from the first bundle and one from the second, and concluded that those packets contained cocaine. Id. The two packets that tested positive for cocaine were then combined with all of the remaining packets from each bundle and weighed. Id. The chemist testified that the white powder found in all ninety-two packets looked alike after a visual inspection. Id. Although the total weight of the packets which had been chemically tested fell below the statutory weight for trafficking, the aggregate weight of the two chemically tested packets along with the other ninety untested packets satisfied the statutory weight threshold. Id.
The defendant was charged with trafficking in cocaine under section 893.135(l)(b), Florida Statutes (1985). Id. After the evidence was presented during trial, the defendant moved for a judgment of acquittal, alleging that the State had failed to establish that the defendant was in possession of twenty-eight grams or more of cocaine — an essential element of the crime. Id. at 1239. The trial court denied the motion, and the jury subsequently convicted the defendant of trafficking. Id.
On appeal, the Third District reversed the defendant’s conviction,- holding that to sustain a cocaine trafficking conviction it is essential that each packet of white powder be individually chemically tested and found to contain cocaine, and that the total weight of the material in the tested packets equal or exceed the requisite statutory weight. Id. The Third District further concluded that only a visual examination of untested packets was insufficient to convict a defendant of trafficking because visual examination does not establish that the substance contained within an individual packet is cocaine. Id. The district court reasoned that simply because one or two packets containing cocaine are found amongst other packets containing a similar-looking white powder is no assurance that the latter untested packets also contain cocaine because: (1) the white powder contained within each individual packet may be any one of a vast variety of other white powdery chemical compounds not containing cocaine; and (2) the material in the untested packets was intentionally separated from the material in the tested packets. Id. at 1239-40.
The district court did recognize other case law which allows random positive testing of one allegedly illegal pill commingled in a single packet that contains other similar-looking pills, or the random positive testing of a substance suspected to be marijuana commingled in a single bag that contains similar-looking material, to demonstrate that the entire packet or bag contains illegal pills or marijuana. However, the district court distinguished those cases from the random testing of only one of many individually wrapped packets of a substance suspected to be powdered cocaine. Id. at 1240. The court reasoned that when suspected drugs are taken from a single package — i.e., which have been commingled by the defendant — it is a fair inference that the remaining similar-looking commingled material is chemically identical to the random positive sample. However, the same inference cannot be made where the untested material has not been commingled with the random sample by the defendant, but is contained in a separately wrapped package from which a random sample is not tested. Id. Consequently, the Third District limited the principle of law to require independent *222 chemical testing only when the suspected substance is contained in individually wrapped packets. Id. at 1240.
Based on the above analysis, the Third District concluded that the State had failed to present sufficient evidence to submit the question of whether the defendant was guilty of trafficking in cocaine to the jury. Id. at 1240-41. Specifically, the court noted
the fact that [the forensic chemist] broke open all of the above ninety-two [] packets, poured their contents into two envelopes, and thereby created two separate packets containing a mixture of cocaine weighing 38.8 grams cannot satisfy the [S]tate’s burden of proof on this issue. Obviously, the [S]tate’s representative cannot himself make his own packets of cocaine by combining separately wrapped packets of tested and untested material which in the aggregate weigh [the requisite statutory weight] or more; the packets which he tests and weighs must be the packets as seized from the defendant.
Id. at 1241. Consequently, the Third District reversed the defendant’s conviction and remanded the case to the trial court with directions to reduce the conviction to simple possession of cocaine. Id.
After Ross, the cases in this area have primarily followed two paths. Almost every case that has addressed the issue of whether the State is required to individually chemically test white powdery substances discovered in separate containers has adopted the rule articulated in Ross. These cases have not limited Ross’s application to only cocaine, but have expanded the principle of law to other controlled substances, such as heroin and methamphetamine, that share a similar powdery appearance. A second line of cases represented by a relatively small number of cases recognizes the rule in Ross, but has determined the rule to be distinguishable based on the character of the controlled substance involved.
Cases That Have Adopted Ross
In each case that has adopted Ross as controlling, a suspected controlled substance was found in at least two individually wrapped packets. Those packets were commingled before each separate package was individually chemically tested. In all of these cases except one, the appellate court has relied upon Ross to hold that the State failed to present sufficient evidence to support the essential element of weight.
For example, in Safford, the evidence at trial demonstrated that the defendant possessed two bags that were seized from his home. Safford, 708 So.2d at 677. One bag contained rock cocaine while the other contained forty individually wrapped foil pack-' ets of a white powdery substance suspected to be powder cocaine. Id. The forty individual packets were combined by the investigative officer into one mixture, and then the aggregate powder chemically tested positive for cocaine. Id. The aggregate substance satisfied the statutory threshold for the trafficking charge, and the defendant was convicted of trafficking for possessing twenty-eight grams or more of cocaine. Id. On appeal, the Second District adopted the reasoning of Ross and held that the chemist’s failure to test each individual packet before the contents of all packets were combined and weighed mandated the reversal of the defendant’s trafficking conviction. Id.
In Sheridan, the defendant was arrested and charged with trafficking in an amount greater than fourteen grams of methamphetamine after two baggies allegedly containing the controlled substance were seized from the defendant’s vehicle. Sheridan, 850 So.2d at 631-40. During trial, the State’s forensic chemist testified that he had tested and weighed one baggie, and *223 that its contents tested positive for meth-amphetaraine and weighed twenty-three grams. Id. at 639. The chemist also testified that he had not seen or tested a second baggie. Id. Based on the evidence adduced at trial, the district court concluded that law enforcement commingled the contents of the two baggies into one before the bags were independently chemically tested. Id. at 640. Relying upon the reasoning of Safford and Ross, the Second District stated
The substance found by the detective was a powdery material, according to State testimony, similar in appearance to other noncontrolled substances, such as vitamin powder or flour. Therefore, the contents of each baggie should have been tested separately, and, if found to be the same controlled substance, the weights combined. As the State bears the burden of proof as to the amount, it is inappropriate to permit the State to commingle ... the contents without testing and then assert that the contents of each baggie when aggregated meet the trafficking quantity.... The State’s procedure created an assumption as' to the amount without the necessary proof. Thus, the evidence of trafficking was legally insufficient and should not have gone to the jury.
Id. (footnote omitted). Based on this analysis, the district court held that the State, by commingling the contents of the packets before chemically testing each packet individually, failed to establish that the defendant possessed a sufficient amount of methamphetamine to satisfy the statutory threshold for trafficking. Id. at 641.
Safford and Sheridan are only two examples of the numerous cases that have adopted Ross in nearly every circumstance in which the State has commingled individually wrapped containers of white powder before chemically testing each container independently. See, e.g., Jackson v. State, 76 So.3d 1130, 1132 (Fla. 4th DCA 2012) (holding that the State failed to meet its burden of demonstrating that the defendant possessed the requisite statutory weight of cocaine under Ross when only one of eight baggies of a substance suspected to be powdered cocaine was tested before the contents of all the bags were commingled and weighed); Campbell v. State, 563 So.2d 202, 202 (Fla. 3d DCA 1990) (noting that the State properly conceded that, based on Ross, the trial court erred in denying the defendant’s motion to dismiss his trafficking conviction when the chemist only tested the contents of one or two heroin capsules found in the defendant’s change purse); State v. Clark, 538 So.2d 500, 501 (Fla. 3d DCA 1989) (holding that the State failed to meet its burden of demonstrating that the defendants possessed the requisite statutory weight of heroin when the forensic chemist commingled and weighed the contents of a few capsules that tested positive for heroin with several untested capsules containing a similar white powdery substance).
In Mosley v. State, the defendant was arrested and charged with trafficking in cocaine following a drug transaction with a confidential informant. 100 So.3d 1214, 1215 (Fla. 2d DCA 2012). During trial, a detective testified that the evidence recovered from the defendant included a shopping bag which contained two individually wrapped single-ounce baggies of white powder. Id. Each baggie field tested positive for cocaine and was then commingled into a single bag. Id. The State’s chemist testified that the aggregated substance tested positive for cocaine and weighed slightly over fifty-five ounces. Id. The chemist further testified that he also tested both emptied baggies individually, and the residue left in each baggie tested positive for cocaine. Id.
*224 The defendant was convicted of trafficking in cocaine, and his conviction was affirmed by the Second District. Id. at 1216-17. The Second District specifically recognized that the law delineated in Sheridan, Safford, and Ross required chemical testing of each individual baggie prior to commingling the contents of each bag together. Id. at 1216. However, it found these cases to be distinguishable and concluded that:
based on the unique circumstances of this case[,] the State presented sufficient evidence of the requisite statutory weight for trafficking. The State’s expert chemist not only testified that the aggregate substance weighed 55.3 grams and contained cocaine, he also testified that he tested each individual empty baggie, and each contained traces of co~ caine. Accordingly, from this evidence, viewed in a light most favorable to' the State, a jury may reasonably infer that the individual substances constituted eo-caine and the aggregate weight of the substances met the requisite weight to support a trafficking conviction.
Id. (citation omitted). Although factually distinguishable from Ross, the court in Mosley advised that the better, evidentiary practice is to first test the substance of each bag before commingling the individual containers. Id. The evidence in the present case does not replicate the evidence in Mosley.
The application of Ross has not been limited to direct appeals where defendants have challenged the trial court’s- failure to grant a motion for judgment of acquittal. Some defendants have successfully asserted ineffective assistance of counsel claims upon alleging and proving that trial counsel failed to challenge the State’s procedure of collecting and testing evidence in accordance with the requirements of Ross. For example, in Bellizia v. Florida Department of Corrections, 614 F.3d 1326, 1328 (11th Cir.2010), the defendant testified that he was approached by two men who threatened to kill his family if he did not help them smuggle drugs into the United States. The defendant swallowed thirty-three individually wrapped pellets given to him prior to boarding his flight from Venezuela to Miami. Id. Upon arriving in Miami, the defendant lost consciousness and was admitted to the hospital, where the pellets were discovered and surgically removed. Id. The lab technician chemically tested and weighed one pellet, which tested positive for heroin, but did not test or weigh the remaining pellets. Id. Instead, the technician assumed the remaining thirty-two pellets contained heroin, approximated their weight based on the weight of the one tested pellet, and concluded that the aggregate weight of all the pellets was 291.2 grams. Id. Based on the technician’s testimony, the defendant was convicted of trafficking in twenty-eight grams or more of heroin and sentenced to a mandatory minimum of twenty-five years’ incarceration. Id.
The defendant filed a habeas petition in federal district court alleging that his state trial counsel performed ineffectively by failing to move for a judgment of acquittal on the basis that the State failed to prove that he possessed the requisite statutory weight of heroin. See id. The federal district court agreed and found that Bellizia’s counsel was ineffective for failing to challenge the State’s testing procedures under Ross. Id. The Eleventh Circuit Court of Appeals affirmed, stating that “Ross sets out the controlling bright-line rule that the State must test each separately wrapped package that is suspected of containing controlled substances in order to establish the identity and weight of the controlled substance.” Id. at 1330. Consequently, the Eleventh Circuit concluded:
*225 In this case, the district court made factual findings that the substance, inside the separately wrapped pellets . was “akin to powder drugs,” and thus Ross mandated that the State was required to test each of the individually-wrapped pellets in order to meet its burden of proof as to the identity and weight of the alleged heroin. It is undisputed that the State failed to do so. Nonetheless [the defendant] was convicted for possessing 28.1 grams of heroin and sentenced to a mandatory minimum term of imprisonment twenty-two years greater than the mandatory minimum sentence of three years that he would have received based upon the weight of the one and only pellet that was actually weighed.
Ross had been the controlling law for many years on the precise issue that [the defendant’s] counsel faced. The district court did not err in concluding that “[n]o competent counsel — that is, no counsel that was aware of the law— would have failed to argue that the weight of the heroin allegedly possessed by [the defendant] was illegally calculated.” Based on this record, we cannot say that this determination was wrong.
Id. (footnote omitted); see also Purvis v. State, 48 So.3d 784, 736-37 (Fla. 2d DCA 2010) (reversing the trial court’s summary denial of an ineffective assistance claim where the defendant’s counsel failed to challenge the State’s failure to chemically test each individually wrapped bag of white powder before commingling and weighing the aggregate).
Cases That Have Not. Applied or Have Distinguished Ross
Less than a year after Ross, a defendant was convicted of trafficking in cocaine after police discovered the defendant with 139 small plastic baggies of rock cocaine. Bond v. State, 538 So.2d 499, 500 (Fla. 3d DCA 1989). Only one of the 139 baggies was tested by the State’s expert, yet the defendant’s conviction was upheld by the Third District. Id. at 500. Relying upon Ross, the district court distinguished rock cocaine from powder cocaine as follows:
The gravamen of Róss was its recognition that a variety of powdery white substances resemble cocaine in powder form. Rock cocaine, however, more closely resembles pills than powder. Asmer v. State, 416 So.2d 485 (Fla. 4th DCA 1982). Asmer and Ross approve the random testing of commingled pills. Thus, we hold that Ross does not mandate the testing of each rock of cocaine.
Id.; see also Collins v. State, 717 So.2d 186, 187 (Fla. 5th DCA 1998) (upholding a conviction for trafficking in cocaine where a lab analyst randomly tested a single bag of crack cocaine that was filled with the commingled contents of thirty to forty individual packets).
In Pama v. State, customs agents stopped and boarded a fishing boat near Everglades City. 552 So.2d 309, 310 (Fla. 2d DCA 1989). On the boat, law enforcement officers discovered 234 bales of a substance believed to be marijuana. Id. Thirteen bales out of the 234 were randomly tested by a deputy who was qualified as an expert in the identification of marijuana. Id. During trial; the deputy testified that all thirteen bales tested positive for marijuana. Id. Of the thirteen bales tested, only three were weighed, with each bale weighing an average of less than forty-two pounds. Id. at 311. Despite the measured weight of the three tested bales, the State attempted to establish through the testimony of the law enforcement officer that the average weight of the 246 bales was fifty pounds, and that the combined weight of the bales exceeded 11,000 pounds. Id. At the close of the State’s case, the defendants’ motion for *226 judgment of acquittal was denied and the three defendants were convicted of trafficking in marijuana in an amount greater than 10,000 pounds. Id. at 810-11.
On appeal, the district court concluded that the State presented sufficient evidence to establish that all 234 bales contained marijuana, stating that:
It is not necessary for the [Sjtate to prove the identification of marijuana by chemical or scientific means.... [Rather,] [t]he [S]tate may prove the identity of a controlled substance by circumstantial evidence such as the substance’s appearance, odor, and packaging, by the circumstances under which the substance was seized, the manner by which the substance was being transported, a person’s on-the-scene remarks identifying the substance and circumstances surrounding the sale or use of the substance.
Id. at 311 (citations omitted). Having determined that the State provided sufficient proof that the 234 bales contained marijuana, the district court addressed whether the State presented sufficient evidence to satisfy the statutory threshold of weight. Id. The court concluded that, based on the average weight of the three measured bales, the State could not establish that the defendants possessed more than 10,000 pounds of marijuana. Id. at 311-12. As a result, the court reversed the defendants conviction for trafficking in more than 10,-000 pounds, but held that the State had established the defendants were guilty of the lesser included offense of trafficking between 2,000 and 10,000 pounds. Id. at 312. The defendants asserted that the district court should apply Ross and hold that when marijuana is separately packaged, an examination of only some of those packages is insufficient to prove that all of those packages contain marijuana. Id. The district court refused to apply Ross, stating:
We decline to interpret this dicta [from Ross ] to mean that in all cases all packages must be examined. Instead, the lack of visual examination should be just one factor considered when determining the sufficiency of the evidence regarding the identification of marijuana. There may be cases, as here, where the circumstantial evidence is sufficient so that it would be unnecessary to require law enforcement to examine all packages.
Id. (emphasis supplied).
Finally, in Lyons v. State, the defendant was convicted of trafficking in cocaine in an amount greater than 400 grams after two bricks of powdered cocaine were discovered in the defendant’s car during a traffic stop. 807 So.2d 709, 710 (Fla. 5th DCA 2002). The two bricks were found hidden in the backseat of the car inside a cereal box that was packed inside a grocery bag. Id. Testimony during trial revealed that the two bricks were “approximately the same size and were otherwise similar in appearance to one another.” Id. at 711. Further testimony indicated that the two bricks were not tested for the presence of cocaine until after they were commingled, but once they were commingled,'the aggregate substance tested positive for cocaine and weighed 813.4 grams. Id. at 710.
The Lyons court recognized that the rule delineated in Ross was relevant, but concluded that it was distinguishable primarily because the size of the nearly identical bricks, which weighed over double the statutory threshold, was enough for a jury to reasonably find that one of the two nearly identical bricks contained at least 400 grams of a substance containing cocaine.- Id. at 711. As a result, the district court upheld the defendant’s conviction for *227 trafficking in cocaine in an amount greater than 400 grams. Id.
In sum, the two different lines of case law described above provide a comprehensive history of how the, rule originally delineated in Ross has either been applied or materially distinguished. In virtually all cases in which law enforcement have encountered a defendant in possession of multiple individually wrapped packets of white powder suspected to be a controlled substance, but failed to independently chemically test each individual packet, both state and federal courts have held that the defendant’s motion for judgment of acquittal should have been, or was properly/granted on the basis that the State failed to meet its burden to prove the essential element of weight. The application of Ross has not been limited to only substances suspected to be cocaine, but has also been extended to other drugs that share a similar white powdery appearance, such as heroin and methamphetamine.
Conversely, when the chemical composition and structure of the substance at issue differs from a white powder — e.g., marijuana or crack cocaine — courts have almost universally not applied Ross and have allowed the State to prove the weight and identity of a substance with circumstantial evidence. Before the decision under review was issued, Lyons was the only case that allowed the State to use circumstantial evidence to prove the identity and weight of a white powdery substance suspected to be cocaine.
The decision of the First District below falls outside of this consistent line of case law and holds that the Legislature’s policy reason for penalizing possession of mixtures or compounds containing cocaine articulated in Yu “legitimizes” the practice of commingling and weighing the contents of multiple packets of white powder before chemical testing. See Greenwade, 80 So.3d at 374. However, we conclude that the First District’s reliance on the “legislative policy” articulated by this Court in Yu was misguided. As previously noted, in Yu we upheld the constitutionality of section 893.135 against the claim that penalizing possession of a certain amount of “any mixture containing cocaine” without regard to the percentage of cocaine in the mixture was a violation of due process and equal protection. Yu, 400 So.2d at 764-65. In upholding the statute’s constitutionality, we stated that:
The legislature reasonably could have concluded that a mixture containing cocaine could be distributed to a greater number of people than the same amount of undiluted cocaine and thus could pose a greater potential for harm to the public.
Id. at 765 (emphasis supplied). The decision below makes no mention of Yu’s constitutional posture, despite relying almost entirely upon Yu and this purported “policy decision by the [Legislature” to justify its adoption of the totality of the circumstances approach. See Greenwade, 80 So.3d at 372, 374. The applicability of Yu to the legal issue presented, however, is limited because the issue before the Court today is neither constitutional in nature, nor does it involve a determination of whether it is permissible for the State to seek a conviction for trafficking without determining the percentage of illegal drugs in the tested substance. See Yu, 400 So.2d at 764. Accordingly, we conclude that it was inappropriate for the First District to rely on limited select portions of Yu as a basis for adopting the circumstantial evidence test.
This Case
We believe the decision in Ross was well reasoned, and we adopt its analysis here. Courts across Florida have al *228 most universally followed the rule delineated in Ross for decades because it provides a concise and simple rule for prosecutors, law enforcement officers, and courts to follow. Ross supports and enhances the clarity, transparency, and credibility of the evidence collection process and the criminal justice system as a whole. Further, we find the approach articulated by the Third District in Ross to be more consistent with our statutory scheme and the proper administration of justice.
It is a basic rule of statutory construction that statutes that are penal in nature must be strictly construed, and the conduct of the accused must fall plainly and unmistakably within the criminal statute to justify a conviction. Nell v. State, 277 So.2d 1, 4 (Fla.1973). It is apparent from the plain language of the relevant statutory sections that the Legislature intended to define and punish trafficking in different types of substances differently based upon the chemical composition of the substance involved. Section 898.135, the statute under which Greenwade was charged and convicted, indicates that the Legislature intended to harshly punish the distribution of controlled substances or mixtures of controlled substances. See § 893.135, Fla. Stat. (2009). Specifically, the statute punishes offenders for trafficking in cocaine, heroin, and methamphetamine — the three controlled substances referenced by the cases above as resembling a white powdery substance — by making the crime a first-degree felony that carries a mandatory-minimum, sentence ranging from a minimum of three years to life imprisonment, and fines that range from $50,000 to $500,000. See § 893.135(l)(b), (c), (f), Fla. Stat. (2009).
It is equally apparent that the Legislature specifically intended to punish the distribution of counterfeit and look-alike substances less harshly. See § 831.31, Fla. Stat. (2009); § 817.563, Fla. Stat. (2009). Under section 817.563:
It is unlawful for any person to agree, consent, or in any manner offer to unlawfully sell to any person a controlled substance named or described in s. 893.03 and then sell to such person any other substance in lieu of such controlled substance.
§ 817.563, Fla. Stat. (2009). While section 831.31(1) provides:
It is unlawful for any person to sell, manufacture, or deliver, or to possess with intent to sell, manufacture, or deliver, a counterfeit controlled substance.[5]
§ 831.31(1), Fla. Stat. (2009). Violators of these sections may face a range of criminal charges from a second-degree misdemean- or to a third-degree felony. See § 831.31, Fla. Stat.; § 817.563, Fla. Stat. A second-degree misdemeanor is punishable by a maximum of sixty days’ imprisonment and a $500 fine, while a third-degree felony is punishable by a maximum of five years’ imprisonment and a $5,000 fine. See §§ 775.082-83, Fla. Stat. (2009).
Thus, even if the Legislature’s intent was to stunt illegal drug distribution by punishing mixtures of controlled substances, the language of the statutes also demonstrates that the Legislature consciously decided to define and punish the *229 distribution of counterfeit or look-alike substances differently and less severely than controlled substances and mixtures of controlled substances. In other words, these statutes reflect a legislative intent to not punish individuals who possess counterfeit or look-alike drugs under the trafficking statute, section 893.185. However, the process of commingling creates an unjustifiably high risk that noncontrolled substances will be inappropriately mixed with controlled substances. Once multiple packets of individually wrapped powder are commingled before they are chemically tested, the simple process of commingling irreversibly destroys both the independent chemical composition of each individually wrapped packet and the ability to discern whether the pre-commingled substance was controlled or counterfeit.[6] In fact, when multiple packets of white powder are commingled before chemical testing, the entire commingled substance will be, according to section 893.185, cocaine or a mixture thereof as long as one of the individual packets discovered in the defendant’s possession contains cocaine. See § 893.135, Fla. Stat. (2009). In effect, by commingling before testing each individually wrapped packet, the State can eliminate any possibility of discovering whether one or more of the individual packets contained a noncontrolled substance, while simultaneously increasing the probability that a defendant will be charged with trafficking in a higher amount than would have been possible if the State had individually tested each packet.
The plain language and structure of these statutes demonstrate that the Legislature clearly intended to provide for distinct crimes and substantially different punishments for different types of substances. To effectuate the legislative intent, we hold that to establish beyond a reasonable doubt that individually wrapped packets of white powder meet the statutory threshold for weight in trafficking prosecutions, the State must chemically prove that each individually wrapped'packet contains at least a mixture of a controlled substance before it may combine the contents and determine whether those contents meet the statutory threshold for weight. This rule is consistent with both the legislative intent of these statutes and good policy which demonstrates that the benefits of independent testing substantially outweigh the burden of requiring the State to chemically test each individual packet.
While we hold that the State must chemically test every individually wrapped packet of white powder seized in order to establish the statutory threshold weight for trafficking, we emphasize that this rule only applies when the substance discovered is one that poses an identifiable danger of misidentification, such as the white powder discovered in this case. If the chemical composition of the substance seized does not pose a danger of misidentification,the State is not required to chemically test individually wrapped packets in order to establish the requisite statutory weight for trafficking. See Bond, 538 So.2d at 500 (holding that the rule in Ross did not apply to rock cocaine); see also Pama, 552 So.2d at 312 (similar holding with respect to marijuana).
*230 • Finally, to rebut the application of Ross, the State contends that Pama and Lyons support the totality of the circumstances approach adopted by the First District below. Specifically, the State contends that under Pama, the State may commingle the contents of individually wrapped packets of white powder and, then rely upon circumstantial evidence to prove that the commingled substances meet the statutory weight threshold for trafficking. We disagree for two reasons.
First, Pama is distinguishable from this case because Pama specifically addressed the State’s ability to prove the identity and weight of marijuana. See Pama, 552 So.2d at 311. In contrast, the holdings of all three conflict cases are based on the idea that, unlike other substances, white powder could be “one of a vast variety of other white powdery chemical compounds” not containing a controlled substance. See Ross, 528 So.2d at 1239; see generally Sheridan, 850 So.2d at 640; Safford, 708 So.2d at 677. This distinction is material because whether the State can commingle the contents of individually wrapped packets before chemically testing and weighing the contents in the aggregate is dependent on the nature of the substance itself.
Second, even if we were to assume that Pama stands for the proposition that the State may commingle the contents of individually wrapped packets of white powder and rely upon circumstantial evidence to prove that the commingled substances satisfy the statutory weight threshold for trafficking, the holding in Pama was effectively overruled by Safford, Sheridan, and Mosley. All four cases were issued by the Second District; however, the latter three were decided after Pama and have taken the exact opposite position on commingling individually wrapped packets of powder. In other words, if Pama stands for the principle of law the State alleges, the case is no longer good law because Safford, Sheridan, and Mosley supersede it. The current position of the Second District on this issue is that the State cannot commingle the contents of individually wrapped packets of white powder without first chemically testing each packet independently. Accordingly, we decline to adopt the position of the State based on Pama.
Furthermore, we find the factual circumstances of Lyons to be distinguishable from the facts here. In Lyons, the State could have satisfied its burden to prove beyond a reasonable doubt that the defendant possessed a controlled substance in an amount greater than the statutory weight threshold for trafficking without commingling the contents of the two bricks discovered. See Lyons, 807 So.2d at 711 (holding that even if only one brick contained cocaine, that “was enough for a jury to reasonably find that one of the two rather identical bricks contained at least 400 grams of a substance containing cocaine.”). No case in this area, including the decision below, presents similar factual circumstances on this dispositive - issue. Rather, in the case before us today — as well as in Ross, Safford, and Sheridan— commingling the contents of the individual packets was necessary to reach the statutory threshold for weight. Consequently, this fact materially distinguishes Lyons from this case and every other case in this area.
CONCLUSION
Based on the foregoing,, we hold that to satisfy the burden of proving that the evidence seized meets the statutory threshold for weight in trafficking prosecutions beyond a reasonable doubt, the State must prove through chemical testing that each individually wrapped packet of white powder seized contains at least a mixture of a controlled substance before the State may *231 combine and weigh the commingled substance. However, we note that our holding applies only to the circumstance in which law enforcement officers discover individually wrapped packets of a substance that poses an identifiable danger of misidentification. Consequently, we quash the decision below and approve the decisions in Ross, Safford, and Sheridan. We further conclude that the trial court should have granted the motion for judgment of acquittal with regard to Greenwade’s trafficking conviction because the State commingled the contents of the nine individual baggies before chemically testing the aggregate. Accordingly, we remand this case to the district court with instructions to direct the trial court to reduce Green-wade’s conviction to simple possession and to resentence him accordingly.
It is so ordered.
PARIENTE, QUINCE, LABARGA, and PERRY, JJ., concur.
CANADY, J., dissents with an opinion in which POLSTON, C.J., concurs.

. Although Greenwade admitted that the green bag contained cocaine, he did not admit that each of the baggies in the, larger bag contained cocaine.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. There is no evidence in the record indicating whether each of the nine baggies field tested positive for cocaine. Detective Bishop testified that he field tested every baggie, but neither the prosecutor nor defense counsel asked Detective Bishop for the results of the field testing. Despite this lack of evidence, the district court’s analysis appears to assume that the results of the field testing were positive. See Greenwade, 80 So.3d at 372, 374.

. Neither the record nor the decision below indicates when the contents of the nine énvel-opes were combined and transferred into the Ziploc bag. Detective Bishop testified during trial that once the nine baggies of cocaine were taken to the property room they were separated into nine separate envelopes. He also testified that it was standard procedure to put all of the powder seized from a single arrest together for testing purposes. However, Detective Bishop did not indicate when the nine envelopes of off-white powder were combined into the one Ziploc bag. Dr. War-niment testified that she did not know whether the nine envelopes individually contained cocaine because she received one bulk container of off-white powder. She testified that "if a number of different bags of powder were dumped together, I would not be able to determine whether all of them were of exactly the same composition.”

. A "counterfeit controlled substance” is defined by section 831.31(2)(a), Florida Statutes (2009), as:
A controlled substance named or described in [section] 893.03 which, or the container or labeling of which, without authorization bears the trademark, trade name, or other identifying mark, imprint, or number, or any likeness thereof, of a manufacturer other than the person who in fact manufactured the controlled substance: or
(b) Any substance which is falsely identified as a controlled substance named or described in [section] 893.03.

. This point was directly illustrated at Green-wade’s trial. Dr. Warniment, the forensic chemist who examined the commingled packets of white powder in this case, testified that because she received one commingled packet of powder she could not "speak to the individual bags, if they existed[,]” and that "if a number of different bags of powder were dumped together, I would not be able to determine whether all of them were of exactly the same composition.”